# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Benny Stormer,  )
              )
    Plaintiff, ) Case No. 1:08-CV-813
              )
    vs.       )
              )
Randy Koon, et al., )
              )
              )
    Defendants. )

## O R D E R

This matter is before the Court on the motion for summary judgment filed by Defendants Randy Koon, Jeffrey McAuliffe, Jeffrey Turner, and Jeremy Dwyer (Doc. No. 25). For the reasons that follow, Defendants' motion for summary judgment is well-taken and is **GRANTED.**

## I. Background

Plaintiff Benny Stormer presents claims for excessive use of force and failure to protect against Defendants Randy Koon, Jeffrey McAuliffe, Jeffrey Turner, and Jeremy Dwyer pursuant to 42 U.S.C. § 1983 from an incident which occurred on May 22, 2007 when he was a pretrial detainee at the Hamilton County Justice Center. Before setting forth the statement of facts relevant to Plaintiffs' claims, the Court addresses two preliminary matters.

First, Defendants argue that the complaint is subject to dismissal because Plaintiff failed to exhaust the available

1

administrative remedies before filing suit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Although the PLRA does require prisoners to exhaust available institutional administrative remedies before filing civil rights lawsuits, that requirement only applies to litigants who are incarcerated at the time of the filing of the suit. Cox v. Mayer, 332 F.3d 422, 423 (6th Cir. 2002); see also Greig v. Goord, 169 F.3d 165, 166-67 (2nd Cir. 1999)(holding that litigants that file prison condition lawsuits after their release from confinement are no longer "prisoners" for purposes of the PLRA's exhaustion requirement). In this case, it does not appear to be disputed that Plaintiff was not incarcerated at the time he filed this lawsuit. Accordingly, he is not subject to the PLRA's exhaustion requirement. See Cox, 332 F.3d at 424 (stating the PLRA is not applicable to a plaintiff who is not confined in a jail, prison, or other correctional facility). Accordingly, the complaint cannot be dismissed for failure to exhaust administrative remedies.

Second, the Court observes that Plaintiff's deposition is not on file, apparently because it was not taken, and Plaintiff has not submitted his own affidavit in response to Defendants' motion for summary judgment. Instead, in order to present his version of the relevant events, Plaintiff apparently relies solely on his blanket denials to Defendants' requests for

admissions.  Plaintiff, however, cannot create a genuine issue of material fact by simply denying Defendants' version of the facts. Alexander v. Caresource, Inc., 576 F.3d 551, 558 (6th Cir. 2009). Rather, it is Plaintiff's burden to respond to the motion for summary judgment with affidavits or other admissible evidence which "set out specific facts showing a genuine issue for trial." Id. (quoting Fed. R. Civ. P. 56(e)(2)).  Thus, "the failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." Id. (internal brackets omitted).  In this case, Plaintiff's opposition to Defendants' motion is not void of supporting evidence.  For instance, he has submitted medical records and internal incident reports from the Hamilton County Sheriff's Office.  Since, however, Plaintiff has not submitted any evidence supporting his version the incident question, the Court draws its statement of the relevant facts from the depositions and affidavits filed by the Defendants.  The Court, however, will continue to give Plaintiff the benefit of any reasonable inferences that can be drawn from those facts.

On May 22, 2007, Plaintiff Benny Stormer was a pretrial detainee at the Hamilton County Justice Center.  The Hamilton County Justice Center is operated and staffed by the Hamilton County Sheriff's Office.  Plaintiff on that day was being confined in a holding area known as Lincoln 22 while awaiting his

3

first court appearance on a minor misdemeanor marijuana possession charge.

An inmate went into an epileptic seizure and medical personnel were called to Lincoln 22 to render aid. Defendants Randy Koon, Jeffrey McAuliffe, Jeffrey Turner, and Jeremy Dwyer, all corrections officers, responded to Lincoln 22 to assist and provide additional security. While the Defendants were gathered at the scene, some of the prisoners, Plaintiff included, began, in profane terms, to express their opinion that Defendants were not trained medics and should leave the stricken inmate alone. Believing that the congregated inmates posed a security risk, Defendant McAuliffe, who was a sergeant, ordered the other Defendants to escort the rest of the inmates out of Lincoln 22 and take them down the hall to Lincoln 21.

According to Defendant Koon's affidavit, Plaintiff blocked the doorway and prevented the other inmates from exiting the area. Plaintiff refused to comply with Koon's order to clear the doorway and refused Koon's order to put his hands behind his back so he could be handcuffed. Instead, Plaintiff broke away and ran down the hallway. As Koon gave chase, they both slipped and fell on the recently-mopped floor. While they were down, Plaintiff tried to grab Koon's shirt. Koon tried to regain control of Plaintiff by sweeping his legs. Plaintiff then lunged at Koon's legs but Koon repulsed Plaintiff with a knee strike to

4

his chest. The knee strike momentarily incapacitated Plaintiff, and, therefore, Koon and Turner were able to handcuff Plaintiff.

At some point during this scuffle, Plaintiff apparently suffered a cut mouth, because as Koon, Turner, and McAuliffe were escorting Plaintiff to a cell, he began spitting blood on and at the officers. When they got to the cell, the officers put Plaintiff face down on a bunk so that they could uncuff him. Plaintiff, however, continued to resist and struggle against the officers. Plaintiff was still spitting blood at the officers and kicked at them with his legs. In fact, at one point he kicked Officer Turner with enough force to fling him against the cell wall. There is some discrepancy whether the officers were able to get one of Plaintiff's hands uncuffed. However, at another point during the struggle, Plaintiff was able to use one of his hands to grab Defendant McAuliffe in the groin.

Defendant Koon admits that during this part of the struggle, he deliver two blows to Plaintiff's side to compel Plaintiff turn his head away from them while he was spitting. Additionally, Koon delivered three closed fist strikes to Plaintiff's midsection to compel him to release Defendant McAuliffe. Defendant Turner gave Plaintiff three knee strikes to his common peroneal nerve to try to gain control of his legs after Plaintiff kicked him to the wall. Additionally, while this part of the struggle was going, Defendant Turner testified that

one of the officers, and he was not sure who, struck Plaintiff on the cheek or temple with a closed fist. The internal affairs report on the incident indicates that Plaintiff was struck in the head several times during this part of the encounter.

Because Plaintiff continued to struggle, Defendant McAuliffe called for the restraint chair. Plaintiff, however, resisted when the officers tried to strap him into the restraint chair. Plaintiff attempted to pull his hands away from Defendant Turner once one of the cuffs had been released, so Turner delivered two or three closed-fist strikes to Plaintiff's midsection to regain control of his arm. Plaintiff also resisted sitting in the chair, so Defendant Dwyer applied an ankle lock to force Plaintiff to sit. These exertions were apparently enough to force Plaintiff to submit. The officers finally were able to strap Plaintiff into the restraint chair and placed a spit hood over his head.

The day after this incident, a physician examined Plaintiff at the Justice Center and noted bruising over Plaintiff's left eye but with no definite evidence of a fracture. Doc. No. 27-4. However, about two weeks later, on June 4, 2007, a discharge summary from University Hospital states that Plaintiff was diagnosed with temporal bone and sinus fractures and an epidural hematoma. Doc. No. 27-5.

On November 19, 2008, Plaintiff filed the instant complaint pursuant to 42 U.S.C. § 1983. The complaint originally asserted five causes of action. Count I alleged that Defendants Koon, McAuliffe, Turner, and Dwyer subjected Plaintiff to excessive use of force in violation of the Fourth and Fourteenth Amendments. Count II asserted a federal constitutional claim against Defendant Koon for malicious prosecution in violation of the Fourth and Fourteenth Amendments. Count III asserted a state law claim against Defendant Koon for malicious prosecution. Count IV asserted a federal constitutional claim against Defendant Sheriff Simon Leis concerning his alleged inadequate policies, practices and customs regarding fitness for duty, in violation of the Fourth and Fourteenth Amendments. Count V asserted a federal constitutional claim against Defendants McAuliffe, Turner, and Dwyer concerning their failure to protect Plaintiff from both their own and Koon's unlawful conduct in violation of the Fourth and Fourteenth Amendments.

On Defendants' motion for judgment on the pleadings and for qualified immunity, the Court dismissed Counts II, III, and IV of the complaint as well as the claims against the Defendants in their official capacities. Doc. No. 22. Accordingly, remaining for adjudication are Plaintiff's claims against Defendants Koon, McAuliffe, Turner and Dwyer in their individual

capacities for excessive use of force (Count I) and failure to protect (Count V).

Defendants now move for summary judgment on the grounds of qualified immunity.

## II. Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654 (1962). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." Anderson, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477

U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. Id.; Anderson, 477 U.S. at 250. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. Id. Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a

dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. Analysis

Defendants move for summary judgment on Plaintiff's claims on the grounds of qualified immunity.

#### A. Qualified Immunity

A public official is entitled to qualified immunity, and thus shielded from suit under § 1983, for his actions if his conduct does not violate a clearly established statutory or constitutional right of which a reasonable official would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987). The official, however, is only entitled to qualified immunity for actions taken in objective good faith within the scope of his duties. Id. at 849 n.34.

Determining a public official's entitlement to qualified immunity presents a two-step inquiry. First, the court must determine, judged in the light most favorable to the party asserting the injury, whether the facts alleged show that the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If no constitutional right would

have been violated on the facts alleged, the inquiry stops and the officer will be entitled to qualified immunity. Id. If a violation can be made out based on a favorable view of the pleadings, the court must determine whether the right at stake was clearly established. Id.

In determining whether a constitutional right is clearly established, the court must first look to decisions of the U.S. Supreme Court, then to decisions of the Sixth Circuit, and, finally, to decisions of other circuits. Walton v. City of Southfield, 995 F.2d 1331, 1336 (6th Cir. 1993) (citing Daugherty v. Campbell, 935 F.2d 780, 784 (6th Cir. 1991)). It is only the extraordinary case that will require a reviewing court to look beyond Supreme Court and Sixth Circuit decisions. Id. The questions of whether the right alleged to have been violated is clearly established and whether the official reasonably could have believed that his conduct was consistent with the right the plaintiff claims was violated, are ones of law for the court. Id. However, if genuine issues of material fact exist as to whether the official committed the acts that would violate a clearly established right, then summary judgment is improper. Id.; see also Jackson v. Hoylman, 933 F.2d 401, 403 (6th Cir. 1991) (affirming district court's denial of summary judgment on the issue of qualified immunity where the parties' factual account of the incident differed).

When a defendant raises qualified immunity as a defense, as the Defendants have done in this case, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. Everson v. Leis, 556 F.3d 484, 494 (6th Cir. 2009).

B. Analysis of Defendants' Qualified Immunity

1. Excessive Use of Force

The Fourteenth Amendment protects a pretrial detainee from the use of excessive force that amounts to punishment. Leary v. Livingston County, 528 F.3d 438, 443 (6th Cir. 2008). In contrast to the allegations of the complaint, which indicate that Defendants set upon Plaintiff with little or no justification and then beat him and continued to beat him even after he was completely restrained, the facts adduced on summary judgment show that:

1. Plaintiff participated in creating, and perhaps instigated, a security threat when he began verbally harassing the Defendants as they tried to assist the epileptic inmate.

2. Plaintiff exacerbated the security threat by blocking the exit and preventing the other inmates from exiting Lincoln 22.

3. Plaintiff refused to submit and resisted Defendant Koon's attempt to restore order by handcuffing him; instead, Plaintiff broke away and fled down the hall.

4. Plaintiff jeopardized Defendant Koon's safety by attempting to grab at Koon's legs after they both slipped on the wet floor.

5. Plaintiff repeatedly expectorated dangerous body fluids on and at the Defendants as they were escorting him to the cell and as they tried to subdue him in the cell.

6. Despite the efforts of three officers to restrain him, Plaintiff continued to resist by spitting at the Defendants and by flailing and kicking at them with his legs. Plaintiff kicked Defendant Turner hard enough to fling him into the wall and somehow managed to grab Defendant McAuliffe by the groin.

7. Plaintiff continued to resist the Defendants' efforts to secure him in the restraint chair by kicking and by trying to break his arms free from their grasp.

In short, the record, even viewed in Plaintiff's favor, shows that for no known reason, Plaintiff went berserk and violently and to the utmost of his ability resisted the Defendants' efforts to restrain him and to restore order. In doing so, Plaintiff posed a substantial safety risk to the Defendants.

Although the Sixth Circuit has apparently not addressed this particular question in a published opinion, most of the Circuit Courts of Appeal are in agreement that in the context of a prison disturbance, such as reflected by the record in this case, the Eighth Amendment standard for excessive use of force applies to pretrial detainees. See Fuentes v. Wagner, 206 F.3d

335, 347-48 (3rd Cir. 2000); <u>Wilson v. Williams</u>, 83 F.3d 870, 876 (7th Cir. 1996); <u>Rankin v. Klevenhagen</u>, 5 F.3d 103, 107 (5th Cir. 1993); <u>Brown v. Acting Director of Metro Dade Correctional</u>, 2010 WL 27951, No. 08-15612, at *4 (11th Cir. Jan. 7, 2010); <u>Sawyer v. Green</u>, 316 Fed. Appx. 715, 717, 717 n.2 (10th Cir. 2008).  Thus, "[w]here a prison security measure is undertaken to resolve a disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff . . . the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline   or maliciously and sadistically for the very purpose of causing harm."  <u>Whitley v. Albers</u>, 475 U.S. 322, 320-21 (1986)(internal quotation marks omitted).  In determining whether the officers used excessive force in this context, the district court should consider the need for the application of force, the relationship between the need and the amount of force, and the extent of the injury inflicted.  <u>Id.</u> at 321.  The prison officials will be entitled to judgment unless the evidence, viewed in the light most favorable to the prisoner, supports a reasonable inference of wantonness in the infliction of pain.  <u>Id.</u> at 322.

The Court has no hesitation in concluding that Defendants' use of force against Plaintiff in this case was both justified and reasonable to restore order and maintain discipline

in the jail.  Therefore, under the first part of the qualified immunity analysis, Defendants did not violate Plaintiff's right to be free from use of excessive force.  Plaintiff instigated the entire incident and violently resisted all efforts to restrain him.  Plaintiff argues that he posed no risk to the Defendants' safety once he was handcuffed and lying face down on the bunk in the cell, but this contention is flatly contradicted by the record.  In fact, the record shows that even if both hands were cuffed at the time, Plaintiff continued to kick and was able to kick Defendant Turner into the wall and somehow was able to grab Defendant McAuliffe's groin.  Additionally, Plaintiff continued to spit blood at Defendants.  Consequently, Plaintiff continued to put the Defendants' safety at risk.  The record does not indicate that the Defendants wantonly beat Plaintiff for no legitimate purpose.  Rather, the record shows that Defendants' use of knee strikes and closed fist strikes were reasonable steps to protect themselves and to compel Plaintiff to stop resisting.

     The Court recognizes that Plaintiff may have suffered some facial fractures during this incident.  It is not clear that these fractures in fact were sustained during Plaintiff's struggle with Defendants since they were not definitively diagnosed as fractures until about two weeks later.  Additionally, there is some discrepancy in the record whether Plaintiff was struck once or several times in the face during the

struggle for control on the bunk. Nevertheless, even assuming the fractures were inflicted at this time and from several blows to his face and head, the record reflects that the punches were inflicted in a good faith effort to make Plaintiff stop resisting and to make him stop spitting blood at the officers. On substantially similar facts, the Court in <u>Davis v. Agosto</u>, 89 Fed. Appx. 523, 526-27 (6th Cir. 2004), held that the prison guards did not use excessive force as a matter of law when they tried to subdue a combative and resisting inmate by, <u>inter alia</u>, striking him three times in the head and mid-section with batons.

Therefore, the Court concludes that the Defendants are entitled to qualified immunity because their use of force was justified and reasonable under the circumstances. Accordingly, Defendants' motion for summary judgment on Plaintiff's excessive use of force claim is well-taken and is **GRANTED.**

### 2. <u>Failure to Protect</u>

Having concluded that Defendants are entitled to qualified immunity on Plaintiff's excessive use of force claim, Defendants are also entitled to summary judgment on Plaintiff's failure to protect claim. Accordingly, Defendants' motion for summary judgment on that claim is well-taken and is **GRANTED.**

<u>Conclusion</u>

In conclusion, Defendants' motion for summary judgment is well-taken and is **GRANTED.** Plaintiff's claims for excessive use of force and failure to protect are **DISMISSED WITH PREJUDICE. THIS CASE IS CLOSED.**

**IT IS SO ORDERED**

Date March 30, 2010                    s/Sandra S. Beckwith
                                       Sandra S. Beckwith
                                Senior United States District Judge